UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**IN ADMIRALTY**

IN THE MATTER OF:

Case No:

Great Lakes Dredge & Dock Company, LLC
as owner of the vessel "JACK", official no. 605280,
for Exoneration from or Limitation of Liability,

    Petitioner.

_____/

**PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Great Lakes Dredge & Dock Company, LLC, as owner of the booster barge JACK, official no. 605280, (the JACK), files this petition for exoneration from or limitation of liability and alleges as follows:

**JURISDICTION**

1. Great Lakes files this petition is accord with 46 U.S.C. §30529 of the Limitation Act.

2. This cause of action is within the admiralty and maritime jurisdiction of the District Court per 28 U.S.C. §1333. Although this action arises only in admiralty, Great Lakes specifically identifies this action as an admiralty claim under Rule 9(h).

**VENUE**

3. Pursuant to Supplemental Rule F(9), venue is proper in this District Court. The JACK has not been attached or arrested, no claimant has filed suit against Great Lakes related to the incident at issue in this action, and the JACK is currently located within this District in Tampa, Florida.

## FACTS

4. At all material times, Great Lakes, a dredging company with its principal place of business in Texas, owned the JACK.

5. At all material times, Great Lakes exercised due diligence to make the JACK seaworthy and fit for the service in which it was engaged.

6. At all material times, the JACK was seaworthy and fit for the service in which it was engaged.

7. On July 5, 2025, Great Lakes notified the U.S. Coast Guard that it would begin utilizing a waterside staging area in San Carlos Bay near Fort Myers Beach, Florida to assemble equipment, including pipeline rafts, booster barges, and float hose, in preparation for a dredging project set to commence later in 2025.

8. As part of that July 5, 2025 notice, Great Lakes also attached a request "that a Local Notice to Mariners be broadcast" to inform local mariners of the project. The requested notice to mariners included the coordinates of the staging area, the anticipated duration the staging area would be used (August 1, 2025 through November 30, 2025), and warnings to local vessel traffic to "avoid active work areas," to "use extreme caution in the area," and to "transit at their slowest safest speed."

9. Along with the precise coordinates for the San Carlos Bay staging area, Great Lakes also sent to the Coast Guard a map of the staging area itself.

10. A copy of the map Great Lakes provided appears below:



11.     The Coast Guard published the information provided by Great Lakes as early as July 9, 2025. The July 9, 2025 version of the Coast Guard's published weekly local notice to mariners is reproduced below:[1]

| TITLE | SUBCATEGORY | DESCRIPTION | LOCATION |
|---|---|---|---|
| San Carlos Bay - Matanzas Pass Channel/General/Marine Construction (Excluding Bridges)/Dredging | Marine Construction (Excluding Bridges) | General/Marine Construction (Excluding Bridges)/Dredging 23056 Location: 26.46745° N / 81.97634° W 26.46292° N / 81.97303° W 26.45919° N / 81.98637° W 26.46355° N / 81.98868° N / 81.97634° W Great Lakes Dredge &amp; Dock Company, LLC will be preparing for an upcoming dredge project, Captiva Island Beach Renourishment Project. In preparation for this project, GLDD will mobilize 30-inch pipeline raft(s), 2 boosters, and a mooring cube and float Hose in the Carlos Bay Staging area. This equipment will be assembled and ultimately towed off-shore of Captiva Island where it will be installed just off the beach for dredging work to begin in mid-September. All vessel traffic should avoid active work areas. Mariners are urged to use extreme caution in the area of operations. Mariners are urged to transit at their slowest safe speed to minimize wake and proceed with caution after passing arrangements have been made. All pipelines and anchors will be marked via lighted can buoy and orange Norwegian buoys. All submerged pipelines will be marked according to USCG regulations. Operations will be 12 hours/day, 7 days/week until dredging begins mid-September. Once dredging begins operations will be 24 hours/day, 7 days/week. TUG BAYOU BAY, TUG SYLVIE FAYE and all other vessels will be monitoring VHF-FM channel 13 and 16. Operations are expected to be completed on or about November 30, 2025. | |

12.     Although the information contained in the local notice to mariners was periodically updated, the Coast Guard continued to publish the information through the duration of Great Lakes' project.

13.     On or about September 12, 2025, Great Lakes towed the booster barge JACK to the San Carlos Bay staging area. The JACK was anchored in place at this

---

[1] The weekly Local Notice to Mariners can be found on the Coast Guard's website at: https://www.navcen.uscg.gov/local-notices-to-mariners?district=7+0&subdistrict=n

temporary location in the staging area for approximately one week while Great Lakes performed preparatory work before the JACK was placed in line for active dredging.

14. On September 12, 2025, Great Lakes notified the U.S. Coast Guard that it had placed the JACK in the staging area, provided the coordinates of the JACK's exact location, and requested the Coast Guard to update the notice to mariners.

15. The Coast Guard published the information in its notice to mariners. A copy of the updated information published by the Coast Guard appears below:

| TITLE | SUBCATEGORY | DESCRIPTION | LOCATION |
|---|---|---|---|
| San Carlos Bay - Matanzas Pass Channel/General/Marine Construction (Excluding Bridges)/Dredging | Marine Construction (Excluding Bridges) | General/Marine Construction (Excluding Bridges)/Dredging 23056 Location: 26.46745° N / 81.97634° W 26.46292° N / 81.97303° W 26.45919° N / 81.98637° W 26.46355° N / 81.98868° W 26.46745° N / 81.97634° W Great Lakes Dredge &amp; Dock Company, LLC will be preparing for an upcoming dredge project, Captiva Island Beach Renourishment Project. In preparation for this project, GLDD will mobilize 30-inch pipeline raft(s), 2 boosters, and a mooring cube and float Hose in the Carlos Bay Staging area. This equipment will be assembled and ultimately towed off-shore of Captiva Island where it will be installed just off the beach for dredging work to begin in mid-September. They have placed the Jack-up Booster "Jack" in a temporary position (26.4646451N / -081.9773447W) in Ft. Myers Matanzas Pass. The booster will be there approximately one week before being placed in line for project start up. All vessel traffic should avoid active work areas. Mariners are urged to use extreme caution in the area of operations. Mariners are urged to transit at their slowest safe speed to minimize wake and proceed with caution after passing arrangements have been made. All pipelines and anchors will be marked via lighted can buoy and orange Norwegian buoys. All submerged pipelines will be marked according to USCG regulations. Operations will be 12 hours/day, 7 days/week until dredging begins mid-September. Once dredging begins operations will be 24 hours/day, 7 days/week. TUG BAYOU BAY, TUG SYLVIE FAYE and all other vessels will be monitoring VHF-FM channel 13 and 16. Operations are expected to be completed on or about November 30, 2025. | |

16. Additionally, the Coast Guard published the information on its interactive map viewer. An excerpt of the map viewer appears below:



4

17. In both publications, the precise coordinates of the JACK (26.4646451N / -081.9773447W) were provided to local vessel traffic.

18. Additionally, while the JACK was in the staging area, Great Lakes used a combination of steady, white, all-round lights and flashing, all-round, amber lights to light the barge at night.

19. The JACK's "voyage" for purposes of the Limitation Act commenced on September 12, 2025 when it was moved to the staging area and terminated on September 21, 2025, when the JACK was moved out of the staging area to a new location.

20. On September 14, 2025, the recreational vessel MERRY TIME allided with the JACK, striking the JACK's port, stern quarter immediately below the location of one of two steady, white lights that were placed on the JACK to mark the two stern corners of the barge (the Allision).

21. The Allision occurred in the San Carlos Bay staging area as defined by the Coast Guard local notice to mariners.

22. The Allision occurred in navigable waters that are governed by the Inland Navigation Rules. *See* 33 C.F.R. §§83.01-83.38.

23. As a result of the Allision, the following individuals have made or may make claims for damages against Petitioner:

    a. Chris Merry

    b. Elisse Merry

    c. D.M. (minor)

    d. A.M. (minor)

    e. Daniel Balogh

    f. Alissa Frias

    g. E.F. (minor).

24. There may be additional potential claimants of which Great Lakes is currently unaware.

25. Great Lakes is unaware of any demands, including unsatisfied liens or claims of liens, in contract, tort, or otherwise, or any suits pending against the JACK arising out of the Allision.

26. The JACK is not a covered small passenger vessel as defined by the Limitation Act. The JACK was unmanned at the time of the Allision.

27. The complaint is filed within six (6) months from the date of the Allision.

## EXONERATION FROM OR LIMITATION OF LIABILITY

28. Great Lakes's actions did not cause or contribute to the Allision. The Allision, and any resulting claims, losses, damages, injuries, and expenses, were neither caused nor contributed to by any fault or negligence on the part of Great Lakes, or anyone whose acts Great Lakes is or may be responsible. The Allision was not caused or contributed to by any unseaworthy condition of the JACK.

29. Instead, the Allision was caused or contributed to by the fault and negligence of parties for whose actions Great Lakes is not responsible or conditions beyond Great Lakes' control. Specifically, the actions of individuals onboard the MERRY TIME caused or contributed to the Allision.

30. In accord with the benefits of the Limitation Act (and all laws supplementary and amendatory thereto), Great Lakes seeks exoneration from liability of all claims, losses, damages, injuries, and expenses arising out of the Allision. Great Lakes has valid defenses on the merits against any claims raised against it arising out of the Allision.

31. In the alternative, and without admitting liability, Great Lakes asserts that in the event this District Court holds that Great Lakes should be held responsible to any claimant or party arising out of the Allision, Great Lakes claims the benefits of the Limitation Act (and all laws supplementary and amendatory thereto) and seeks limitation of any liability of all claims, losses, damages, injuries, and expenses arising out of the Allision.

32. Great Lakes had no privity or knowledge of any negligence on behalf of Great Lakes, individuals for whom Great Lakes is responsible, or the JACK, which caused or contributed to the Allision.

33. The value of Great Lake's ownership interest in the JACK, on the date of the Allision, is $2,600,000. Great Lakes will file an affidavit attesting to the value of the JACK.

34. At the time of the Allision, the JACK had no pending freight. Great Lakes will file a declaration of pending freight attesting to the lack of any freight.

35. The amount of all potential claims against Great Lakes arising out of the Allision potentially exceeds the value of the JACK.

36. Great Lakes will file an Ad Interim Stipulation with a Letter of

Undertaking as approved security equal to (a) the amount of Great Lakes interest in the JACK and (b) an interest rate of six percent (6%) per annum from the date of the security.

37. Great Lakes files this complaint, including its claim for exoneration from and limitation of liability, on behalf of itself and on behalf of its underwriters, that shall be exonerated from liability or limited to the same liability exposure to the same extent as Great Lakes.

38. If it later appears that Great Lakes is or may be liable and the amount of Great Lakes' interest in the JACK is not sufficient to pay all losses in full, then claimants shall share pro rata in the aforementioned sum, saving to claimants any rights or priority they may have as ordered by this District Court, as provided by the Limitation Act, or as set forth in the rules and practices of the District Court.

**WHEREFORE**, Petitioner Great Lakes prays:

A. The District Court approves Great Lakes Ad Interim Stipulation and Letter of Undertaking in the amount of $2,600,000 (plus six percent per annum) as sufficient security for the value of Great Lakes' interest in the JACK on the date of the Allision;

B. The District Court issue a notice against all persons, entities, firms, or corporations having or alleging to have potential claims related to the Allision against which Great Lakes seeks exoneration from or limitation of liability, admonishing the claimants to appear and file claims in this District Court on or before a date fixed by the District Court as specified

       in the notice or be forever barred and permanently enjoined from making or filing any such claims, and to answer the allegations of this petition;

C.    The District Court restrain, stay, and enjoin, in any jurisdiction, the prosecution of any lawsuits already commenced, the commencement or prosecution of any lawsuits of any nature or description, any motions or actions against Great Lakes, the JACK, any property of Great Lakes, or the insurers or underwriters of Great Lakes, seeking recovery for damages, losses, death, injuries, or expenses related to the Allision except in this Limitation Action.

D.    The District Court adjudge that Great Lakes, its insurers and underwriter, and the JACK are not liable to any extent for any damages, losses, death, injuries, or expenses arising out of the Allision and exonerate them from all liability;

E.    In the alternative, if this District Court should adjudge that Great Lakes is liable in any amount whatsoever, that said liability be limited to the value of Great Lakes' interest in the JACK; and in that event, that any monies paid or ordered to be paid may be divided pro rata among such claimants as may prove their claims, saving to all parties the priorities to which they may be entitled; and a decree may be entered discharging Great Lakes from all other liability;

F.    Great Lakes has such other and further relief as may be just and proper.

Lau Lane Pieper Conley
& McCreadie, P.A.

**s/ Elbert L. Martin, IV**
ELBERT L. MARTIN IV
Florida Bar No. 98010
EDDIE GODWIN
Florida Bar No. 0547468
LAU, LANE, PIEPER, CONLEY
& McCREADIE, P.A.
100 S. Ashley Drive, Suite 1650
Tampa, Florida 33602
T: 813 | 229-2121
F: 813 | 228-7710
emartin@laulane.com
egodwin@laulane.com
jwolf@laulane.com
*Attorneys for Petitioner Great Lakes Dredge & Dock Company, LLC*